UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: ) | |
| ) | |
| **LAKOTA CANYON RANCH** ) | |
| **DEVELOPMENT, LLC,** ) | |
| ) | |
| Debtor. ) | |
| ) | **Case No. 11-26157 HRT** |
| ) | **Chapter 11** |
| **ALPINE BANK,** ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| **LAKOTA CANYON RANCH** ) | |
| **DEVELOPMENT, LLC,** ) | |
| ) | |
| **Respondent.** ) | |

**ORDER ON MOTION FOR RELIEF FROM STAY**

This case comes before the Court on the *Motion of Alpine Bank for Relief from the Automatic Stay* (docket #89) (the "Motion"). On December 6, 2011, the Court conducted a final evidentiary hearing on the Motion.

I.  FACTUAL BACKGROUND

The Debtor is a real property developer.  It has developed a golf course community in the town of New Castle, Colorado.  In connection with that golf course community, the Debtor owns the golf course, a recreation center, a commercial parcel, various residential lots, and homes at 141 Whitehorse Drive and 215 Spirit Way, (the "Lakota Properties").   The Debtor also owns properties in Aspen, Colorado, at 707 E. Hyman Avenue (the "Brownstones"); and in Carbondale, Colorado, in the Keator Grove development (the "Keator Properties") (collectively, the "Properties").  Originally, ownership of the various Properties was organized through a number of limited liability companies.  Prior to the filing of the bankruptcy petition, the various LLC's merged into the Debtor.  Debtor's most recently filed real property schedule[1] identifies the Properties and reports the Debtor's most current estimate of values as follows:

---

[1] Debtor's *Schedule A - Real Property - Amended* (docket #207) was filed on December 29, 2011, subsequent to the hearing in this matter.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

| **Real Property (summary)** | Location | Amended Values |
|---|---|---|
| Upper Deer Valley Drive Lots | New Castle, CO | $ 560,000 |
| Cheyenne Park Multi-Family Lot 11 (Duplex Lot) | New Castle, CO | $ 60,000 |
| Future Filings - 5 parcels totaling 115.963 acres | New Castle, CO | $ 600,000 |
| Recreation Center - Clubhouse Drive | New Castle, CO | $ 327,000 |
| 141 Whitehorse Drive, (Whitehorse House) | New Castle, CO | $ 242,000 |
| Golf Course (Lakota Canyon) | New Castle, CO | $ 760,000 |
| Commercial Parcel 2A 2.872 acres - Castle Valley Blvd | New Castle, CO | $ 160,000 |
| 707 E Hyman Ave, Unit A (Brownstones) | Aspen, CO | $ 5,770,000 |
| 707 E Hyman Ave, Unit C (Brownstones) | Aspen, CO | $ 131,300 |
| 12 Residential Lots in the Keator Grove Subdivision | Carbondale, CO | $ 260,000 |
| 215 Spirit Way, (JJ Mustang - Half-Duplex House) | New Castle, CO | $ 215,000 |
| 332 Linden Circle (Keator Grove House) | Carbondale, CO | $ 336,000 |
| | | $ 9,421,300 |

Alpine Bank ("Alpine") holds deeds of trust encumbering all of the Properties and securing a total indebtedness of approximately $20 million. The notes on the Brownstones went into default as early as April, 2010. By April, 2011, all of the individual notes secured by the Properties were in default. In March, 2011, a receiver was appointed to oversee the operations of the golf course and recreation center.

John Elmore II is Debtor's principal. He has had a long and successful history in the business of real estate development. Mr. Elmore's history with Alpine is also a long one – extending over 20 years. Prior to the onset of the recession in 2008, Mr. Elmore and his affiliated entities ranked among Alpine's top 10% on the basis of aggregate loans.

In 2006 Alpine and various of the separate entities that have now been merged to form the Debtor entered into a master revolving loan agreement with a maximum credit line of $20 million (the "Lakota Loan"). The Properties securing the Lakota Loan were thought to have a value of approximately $35 million at the time the Lakota Loan was executed by the parties. The Debtor now values the properties associated with the Lakota Loan and subject to the master deed of trust at less than $3 million. The Debtor is in default on all of its obligations to Alpine.

Debtor filed its bankruptcy petition in the Bankruptcy Court for the Eastern District of North Carolina on May 13, 2011. On May 25, 2011, Alpine Bank filed a motion to transfer

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

venue to Colorado and on June 21, 2011, the Bankruptcy Court for the Eastern District of North Carolina granted the motion to transfer venue to this Court.

At the time the bankruptcy petition was filed, a receiver was in place to operate and preserve the value of the golf course, the recreation center and associated properties. The operations of the golf course and recreation center do not currently cover their expenses and Alpine has been making up for that operational shortfall as well as paying property taxes and funding the receiver's operations. The Debtor filed but did not pursue a motion for the receiver to turn over the Lakota Properties and the receiver remains in place.

## II. DISCUSSION

The plan that the Debtor outlined at the hearing would: 1) sell the Brownstones in a transaction that would also provide $700,000 of capital investment; 2) restructure the debt to Alpine by writing down the debt to the values of the properties securing it and amortize the debt over 25 years at 3.25% APR; and 3) pursue a lender liability lawsuit against Alpine.

Debtor intends to sell the Brownstones and a 5% share in the Lakota Properties in a single transaction. Evidence of this aspect of the Debtor's plan was presented in the form of a letter of intent from one Charif Souki (the "Souki Letter") expressing his intent to purchase the Brownstones for $6.2 million and to pay an additional $700,000.00 for a 5% stake in the reorganized debtor. According to Mr. Elmore's testimony, he had been discussing this transaction with Mr. Souki for approximately ten days but did not receive the Souki Letter until approximately one hour prior to the hearing. The Souki Letter is non-binding; contains scant detail; and is expressly conditioned upon Alpine providing financing to Mr. Souki. Mr. Souki did not appear to testify at the hearing. According to Mr. Elmore's testimony, he believes that Mr. Souki would require financing from Alpine in the amount of $4 - 4.5 million.

Mr. Elmore testified that he is engaged in similar discussions with at least two other parties. No documentation concerning those discussions was presented at hearing.

The Brownstones are fully encumbered and, under the Debtor's proposal, the full $6.2 million purchase price, net of commissions, would be turned over to Alpine. The Debtor would use the $700,000.00 investment from Mr. Souki or another investor to fund Debtor's operations for one year. That would include making road repairs, paying property taxes, funding operational shortfalls at the recreation center and the golf course and payment of interest on its obligations to Alpine. Mr. Elmore, agrees that the Debtor would turn the Properties over to Alpine after one year if he is unable to secure new investment or another means of financing.

Another facet of the Debtor's plan is to pursue a lender liability lawsuit against Alpine. The Adversary Complaint seeks damages; denial of Alpine's claim; and equitable subordination of Alpine's unsecured claims.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

A. "Cause" for Relief under 11 U.S.C. § 362(d)(1)

Under § 362(d)(1),

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

"Cause" for relief from the automatic stay is not necessarily limited to lack of adequate protection. *In re JE Livestock, Inc.*, 375 B.R. 892, 897 (B.A.P. 10th Cir. 2007) ("While cause under § 362(d)(1) includes 'the lack of adequate protection of an interest in property,' it is not so limited. . . . Because 'cause' is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis."). However, lack of adequate protection is sufficient to conclude that cause exists for lifting the stay and the Court finds that the interests of Alpine are not adequately protected.

The parties agree that no equity cushion exists in the property to provide protection to Alpine's interest. By the Debtor's most recent estimates, Alpine is undersecured by approximately $10 million on its $20 million debt. Moreover, Alpine is currently spending its own money, over and above the fees of the receiver, to protect its interest. Based on that evidence, the Court finds that Alpine's interest is declining in value and that, absent an offer of adequate protection, it is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1).

Debtor's offer of adequate protection is based upon the Souki Letter. But the Court cannot find that the Souki Letter constitutes adequate protection for Alpine's interest in the Properties. In terms of demonstrating the Debtor's ability to provide Alpine with adequate protection, the Souki Letter rises no farther than the level of a hope and a prayer. It is too speculative to provide a basis for the Court to find that Alpine's interest is adequately protected. The evidence is that the Debtor lacks any present ability to provide adequate protection to Alpine. An offer of adequate protection based on the speculative possibility that the funds will materialize simply does not constitute adequate protection. *See, e.g. In re DB Capital Holdings, LLC*, 454 B.R. 804, 817-18 (Bankr. D. Colo. 2011) (citing *Rader v. Boyd*, 252 F.2d 585 (10th Cir.1958); *Rocco v. J.P. Morgan Chase Bank*, 255 Fed.Appx. 638 (3rd Cir.2007); *In re Whitney*, 1988 WL 141523, *5 (Bankr. D. Minn. 1988)). Consequently, the Court finds that Alpine is entitled to relief from the automatic stay for cause under § 362(d)(1) based on the lack of adequate protection of its interest in the Properties.

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

B. Whether the Properties Are Necessary for an Effective Reorganization

Under § 362(d)(2),

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . with respect to a stay of an act against property under subsection (a) of this section, if –
 (A) the debtor does not have an equity in such property; and
 (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

Alpine established that the Debtor lacks equity in its Properties. Upon that showing, the burden shifts to the Debtor to show that there is "'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n v. Timbers of Inwood Forest*, 484 U.S. 363, 376 (1988) (quoting *In re Timbers of Inwood Forest Associates , Ltd.*, 808 F.2d 363, 370-71 (5th Cir. 1987)).

Mr. Elmore is fully aware of the difficulty of the Debtor's situation. He testified as to the extraordinarily economic conditions faced by the real estate development industry:

What we're seeing right now, there's nothing that's ever been close to this. There is no money available hardly for development. It's just about impossible for most developers to borrow any money from anybody for any of the normal development purposes. This far exceeds anything we've ever seen before. . . . I had loans, when this started, in 26 different banks and I've spoken to most of those banks trying to work out various arrangements before – with the same conclusion that no one was willing to lend additional funds. And they were all asking me to take my loan to another bank and this was – every time I got the same questions. . . . This is, as Allan Greenspan describe it, an economic tsunami. And it's more so for the real estate business than any other industry I'm aware of.

The plan that the Debtor filed on September 30, 2011, (docket #144) does not reflect the new investment necessary to fund the Debtor's operations in the near term and will need to be revised. However, key provisions of the Debtor's plan, in broad outline as presented to the Court at hearing are as follows:

 1. The Debtor will sell the Brownstones in order to pay a portion of the Alpine debt and obtain investment of approximately $700,000.00 to compensate for operating losses with respect to the golf course and the recreation center for one year,

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

        defray ongoing tax expense and to fund compliance with its road repaid obligations.
2.     The plan would restructure the secured debt to Alpine by writing down the secured debt to the value of Alpine's collateral – approximately $3.5 million after sale of the Brownstones – and amortizing the debt over 25 years at 3.25%.
3.     The Debtor would pursue its lender liability action against Alpine seeking damages, disallowance of Alpine's claim, and subordination of Debtor's obligations to Alpine.

      The Debtor has not demonstrated to the Court that it has a plan in prospect that has a reasonable probability of being confirmed within a reasonable time.

      The Court must substantially discount the evidentiary effect of the Souki Letter. Without Mr. Souki appearing before the Court to testify as to his intentions, the Court can give it little weight. The letter commits Mr. Souki to do nothing. The letter may be terminated by Mr. Souki at any time for any reason, or for no reason, at Mr. Souki's sole discretion. While the Souki Letter is consistent with Mr. Elmore's testimony that he has engaged in conversations with parties seeking additional investment in the Debtor, it does not persuade the Court of the likelihood that such investment is forthcoming and, beyond the Souki Letter, the record is devoid of any indication of progress toward formulating a viable reorganization plan.

      There was substantial testimony concerning the lender liability action that the Debtor has filed against Alpine Bank. That testimony, however, is largely irrelevant to the question of whether the Debtor has a reasonable prospect of reorganization within a reasonable period of time. The adversary action seeks damages, disallowance of Alpine's claim, and equitable subordination of Debtor's obligations to Alpine. The Debtor provided substantial detail as to the basis of its complaint against Alpine; it provided less detail as to the role that the adversary matter plays in the confirmation and execution of its plan.

      To the extent that successful prosecution of the lender liability claim against Alpine is necessary to a reorganization, the evidence does not persuade the Court that a successful conclusion to that litigation is more likely than not within a reasonable period of time. The outcome of that litigation is speculative and provides no foundation upon which to build a viable reorganization plan.

      Certainly, it is commonplace for debtors to pursue litigation matters as a part of their reorganization plans. But the Debtor cannot await the outcome of litigation to fund its plan. It has immediate cash needs. Its operation of the golf course and recreation center do not cover their expenses; it needs cash to remedy road maintenance deficiencies with the town of New Castle so it may resume efforts to market lots; it needs cash to pay its property taxes; and it needs cash to make payments to Alpine. Those are immediate needs that cannot await the outcome of Debtor's lawsuit. Consequently, the Debtor's prospects for a successful

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

reorganization within a reasonable period of time rise and fall on its prospects for attracting new financing or outside investment. The evidence does not convince the Court that Debtor has a reasonable prospect of attracting new financing or investment within a reasonable time.

A primary strike against the Debtor in its effort to resist lifting of the automatic stay as to Alpine is the time it has spent under protection of the Bankruptcy Court. This case was filed on May 13, 2011, nearly seven months prior to the hearing on Alpine's Motion. The Debtor's exclusivity period under § 1121(b) expired on September 10, 2011, nearly three months prior to the hearing. During that period of time, Debtor has attracted no debtor-in-possession financing. It does not have the wherewithal to operate its property and has been content to allow the receiver to remain in place and for Alpine to fund the operating losses of the golf course and the recreation center. During the pendency of this case, Alpine has not merely been prevented by the automatic stay from exercising its contractual rights with respect to its collateral. It has been obliged to actively fund operating shortfalls in order to maintain the value of its collateral by continuing the golf course and recreation center operations.

In *In re Gunnison Center Apartments, LP*, 320 B.R. 391 (Bankr. D. Colo. 2005), Judge Romero observed that "[w]hen relief from stay is requested near the expiration of the exclusivity period the 'sliding scale' or 'moving target' burden of proof requires a greater showing than 'plausibility.'" *Id*. at 402 (citing *In re Holly's Inc.*, 140 B.R. 643, 702 (Bankr. W.D. Mich. 1992)). The lesser standard that the courts use early in a case "'is intended to benefit debtors who have a *realistic* chance of reorganization but who have not had sufficient time to formulate a confirmable plan.'" *Id*. at 402 (quoting *In re Apex Pharmaceuticals, Inc.*, 203 B.R. 432, 441 (N.D. Ind.1996)).

Time is indeed the issue here but it is not the time it takes to formulate a confirmable plan. It is the time it takes for financing to return to the real estate market. By granting a debtor-in-possession an exclusivity period, the Bankruptcy Code makes ample provision for the former. It cannot provide for the latter. Debtor's lack of reorganization prospects does not reflect any lack of effort by its management. As Mr. Elmore observed, "there's just no lending right now. There's no availability for funds for real estate projects."

Debtor has had all of the opportunity and more that the Code provides to debtors-in-possession to reorganize their affairs. The diligence and good faith of the Debtor's management are not at issue here. The Court is satisfied that management has diligently pursued whatever reorganization possibilities exist. Nonetheless, a secured creditor may not be denied leave to exercise its rights based only on the hope that the market will improve and the hope that a lender liability law suit will be successful. Even if the Court could interpret The Souki Letter as something more concrete than a totally non-committal expression of interest, it would not constitute a reasonable basis for a plan. According to Mr. Elmore's testimony, all the $700,000.00 investment would allow the Debtor to do would be to tread water for a year while it continues to seek outside investment. That does not constitute a reasonable probability that the

ORDER ON MOTION FOR RELIEF FROM STAY
Case No. 11-26157 HRT

Debtor will confirm a plan within a reasonable period of time. Thus, Alpine is entitled to relief from stay under 11 U.S.C. § 362(d)(2).

### III.  CONCLUSION

In accordance with the above discussion, the Court hereby

**ORDERS** that the *Motion of Alpine Bank for Relief from the Automatic Stay* (docket #89) is GRANTED.

Dated this  25th  day of January, 2012.

BY THE COURT:

Howard R. Tallman, Chief Judge
United States Bankruptcy Court